O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| In re | Case № 5:15-cv-01672-ODW |
| CITY OF SAN BERNARDINO, CALIFORNIA, | U.S. Bankruptcy Court Case No. 6:12-bk-28006-MJ |
| Debtor. | **OPINION** |
| RAYMOND NEWBERRY; PATRICIA MENDOZA; MARIA ABOYTIA; JUANA PULIDO; JESUS PULIDO; JONATHAN PULIDO; RICHARD GONZALEZ LOZADA; MELINDA McNEAL; BERTHA LOZADA; MILDRED LYTWYNEC; NICHOLAS LYTWYNEC; GLORIA BASUA; LIZBETH BANUELOS; CARLOS OCHOA, | **Appeal from the United States Bankruptcy Court for the Central District of California, Riverside Division;** |
| Appellants, | **The Honorable Meredith A. Jury Presiding** |
| v. | |
| CITY OF SAN BERNARDINO, CALIFORNIA, | |
| Appellee, | |
| and | |
| UNITED STATES OF AMERICA, | |
| Intervenor. | |

## I.   INTRODUCTION

Appellants Raymond Newberry, Patricia Mendoza, Maria Aboytia, Juana Pulido, Jesus Pulido, Jonathan Pulido, Richard Gonzalez Lozada, Melinda McNeal,

Bertha Lozada, Mildred Lytwynec, Nicholas Lytwynec, Gloria Basua, Lizabeth Banuelos, and Carlos Ochoa (collectively "Newberry") appeal from an order denying them relief from stay to pursue a civil rights action against Debtor-Appellee City of San Bernardino and its employees.   This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).   For the reasons discussed below, the Court **AFFIRMS** the order of the bankruptcy court.[1]

## II.   FACTUAL BACKGROUND

In August 2012, the City filed a voluntary petition under Chapter 9 of Title 11 of the United States Code.   *City of San Bernardino, Cal.*, 499 B.R. 776, 780 (Bankr. C.D. Cal. 2013).   On August 28, 2013, the bankruptcy court determined that the City was eligible for Chapter 9 relief.   *Id.* at 778.

On November 14, 2014, Newberry filed a civil rights action against the City and several City officers in the United States District Court for the Central District of California.   (Appellant's Excerpts of Record ("AER") 36–64, ECF No. 7.)   Newberry alleged that in August 2014, the City's police department conducted an unlawful search of a thirty six-unit apartment complex in the City known as the Edgehill Apartments.   (AER 39–46.)   The search was allegedly designed to root out "criminal elements" in the complex, and was carried out pursuant to an inspection warrant rather than a criminal search warrant.   (AER 39–42.)   Inspection warrants are intended to grant access to structures only for the purpose of investigating potential safety risks or code violations therein, Cal. Code Civ. Proc. § 1822.50; they may not be used as a pretext to search for criminal activity.   *Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355, 1360 (9th Cir. 1994).   Thus, Newberry argued, the search violated the Fourth Amendment.   (*See* AER 52–64.)   Newberry also alleged that the police department invited members of the media to the search in an effort to show that the

---

[1] After considering the briefs and excerpts of record filed by each party, the Court finds that the decisional process would not be significantly aided by oral argument because the facts and legal arguments are adequately presented in the briefs and record.   Fed. R. Bankr. P. 8019(b)(3).

City was getting tough on crime, and that this also violated the Fourth Amendment. (AER 43–44.)   Newberry's Complaint sought declaratory relief, injunctive relief, damages, and attorneys' fees.   (AER 52–64.)   Less than a month later, the district court determined that the claims against the City and its officers were subject to the automatic bankruptcy stay.   (Appellee's Req. for Judicial Notice ("Appellee RJN") at Ex. 1, ECF No. 15.)[2]

On February 4, 2015, Newberry moved the bankruptcy court for relief from stay, which the City opposed.   (AER 14–218.)   At the hearing on the motion, the court indicated that it was inclined to deny relief from stay, but that it was concerned about the City's alleged practice of searching apartment complexes for criminal activity pursuant to inspection warrants.   (AER 377–78.)   Thus, the court proposed a compromise: it would deny relief from stay, but it would also enter an order enjoining the City from performing these types of searches in the future with respect to the Newberry plaintiffs.   (AER 378.)   The parties agreed in principle to the compromise, and the court ordered them to submit an appropriate proposed order.   (AER 378–81.)

After much negotiation, the parties were unable to agree on the language for the order.   (Appellee's Supplemental Excerpts of Record ("SER") 153, ECF No. 14.) Newberry wanted the order to contain a judicial declaration that the August 2014 search violated the Fourth Amendment, and wanted the injunction to be citywide rather than limited to the Edgehill Apartments—neither of which the City would agree to.   (SER 156, 166.)   Given the impasse, Newberry renewed its motion for relief from stay, and also moved to dismiss the City's entire bankruptcy proceeding as being filed in bad faith.   (AER 220–536.)   At the hearing, the bankruptcy court stated again that it did not intend to grant relief from stay, noting that nothing had changed since the last

---

[2] Newberry also named the County of San Bernardino as a defendant in that lawsuit.   The district court eventually granted summary judgment in favor of the County.   (Minute Order, *Newberry v. County of San Bernardino*, No. EDCV 14-2298 (C.D. Cal. Mar. 23, 2016), ECF No. 152.) Newberry appealed from the grant of summary judgment, which is currently pending before the Ninth Circuit.

hearing, and that Newberry "[did not] address the *Curtis* factors any more than it answered them favorably the first time." (SER 152.)  The court noted that litigation in another forum would "interfere with the reorganization efforts" by the City, that the City did not have the financial ability to defend itself against the lawsuit, and that granting relief to Newberry would be unfair to other creditors who were denied relief from stay. (SER 152–53.)  However, the court was troubled by the City's repeated assertion that the search was perfectly lawful, and its statements implying that it would continue to carry out such searches in other areas of the City. (SER 156–63.)  After hearing extended argument, the court stated that it would enter an order enjoining the City from conducting such searches of any dwelling within the City where the Newberry plaintiffs reside, but that it would otherwise deny relief from stay with prejudice. (SER 164.)  The court also denied Newberry's motion to dismiss the City's bankruptcy proceeding, reasoning that the motion was not properly noticed. (SER 152.)

Shortly thereafter, the court entered an order: (1) denying Newberry's motion with prejudice; (2) requiring Newberry to dismiss the lawsuit that it filed in the district court; (3) enjoining the City from entering any apartment in the Edgehill complex, or entering any apartment in the City that the Newberry plaintiffs may move to, based solely on an inspection warrant. (SER 249–51; AER 8–11.)  The court ordered the injunction to remain in effect until it had confirmed a plan of adjustment in the broader bankruptcy case. (*Id.*)  Newberry timely appealed from this order. (AER 1–7.)  That appeal is now before this Court for consideration.

### III.   STANDARD OF REVIEW

A bankruptcy court's legal conclusions are reviewed de novo, and its factual findings for clear error. *In re Mortgages Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014). Appellate review of a denial of relief from stay is for abuse of discretion. *In re Conejo Enters., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996).  "Decisions committed to the bankruptcy court's discretion will be reversed only if 'based on an erroneous

conclusion of law or when the record contains no evidence on which the bankruptcy court rationally could have based that decision.'" *Id.* (citations and internal brackets omitted).

## IV.   ISSUES ON APPEAL

Newberry frames the issues on appeal as follows:

(1) Do the automatic stay provisions of 11 U.S.C. §§ 362 and 922 . . . protect a municipal debtor from suit if it commits an intentional tort against its citizens?

(2) Does granting an automatic stay to a municipal debtor who commits an intentional tort against its citizens violate [its] citizens' First Amendment rights to petition the government?

(3) Do the automatic stay provisions of the Bankruptcy Code vitiate 28 U.S.C. § 2201—the right to injunctive and declaratory relief?  Are attorneys' fees requests under 42 U.S.C. § 1988 [considered] claims against a municipality or necessary expenses?

(4) Did the [Bankruptcy] Court err in applying the facts of this case to the *Curtis* factors in weighing the balance of harms between the City and its citizens?

(Appellant's Opening Br. 8.)

## V.   DISCUSSION

### A.   Issue 1: Sections 362 and 922

Newberry argues that § 362(a)(3) does not apply to suits seeking injunctive relief based on claims arising post-petition.[3]  (Appellant's Opening Br. 27.)  Newberry also argues that intentional tort claims and constitutional claims against a municipality that arise post-petition are a special breed of claims that should be exempt from stay.  (*Id.* at 14–21.)  The Court finds neither argument persuasive.

When a bankruptcy petition is filed, the Bankruptcy Code automatically stays

---

[3] Newberry argues that the injunction ordered by the bankruptcy court is not broad enough.  That is, because the injunction requires them to register their addresses with the City, Newberry argues that the injunction comes at the cost of their privacy rights.  (Appellant's Supplemental Br. 3–4.)  To avoid having to register their addresses, Newberry seeks a citywide injunction instead.

"any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3); *see also id.* § 901(a) (section 362 applies in Chapter 9 proceedings).  In a Chapter 9 bankruptcy, "property of the estate" means "property of the debtor."  *Id.* § 902(1).  Similarly, § 922(a)(1) enjoins "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against an officer or inhabitant of [a municipal] debtor that seeks to enforce a claim against the debtor."  11 U.S.C. § 922(a)(1).  The automatic stay "is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). Section 362(a)(3) in particular was intended "to prevent dismemberment of the estate" during the bankruptcy proceeding so that there can be an "orderly distribution of the debtor's assets" at the conclusion of the case.  *In re Chugach Forest Prod., Inc.*, 23 F.3d 241, 245 (9th Cir. 1994).  Thus, § 362(a)(3) and § 922(a)(1) generally operate to stay enforcement of claims against a municipal debtor or its employees that arise post-petition, *In re Petruccelli*, 113 B.R. 5, 6 (Bankr. S.D. Cal. 1990) (citing *In re Johnson*, 51 B.R. 439, 441 (Bankr. E.D. Pa. 1985)); *In re: City of San Bernardino, Cal.*, 545 B.R. 14, 16 (C.D. Cal. 2016), unless the action falls within one of the enumerated exceptions to the stay, 11 U.S.C. § 362(b).

### 1. Injunctive Relief

Newberry relies on *American Automobile Association, Inc. v. Lodge*, No. 1:12-CV-0854 LJO-BAM, 2012 WL 6608600 (E.D. Cal. Dec. 18, 2012) ("*AAA*"), for the proposition that a suit seeking injunctive relief based on claims arising post-petition is not stayed under § 362(a)(3).[4]  (Appellant's Opening Br. 27.)  In *AAA*, the plaintiff sued the defendant, who was in Chapter 11 proceedings, for trademark infringement.

---

[4] Newberry does not appear to argue that actions for injunctive relief fall outside § 922(a).

2012 WL 6608600, at *1.  The court entered a default judgment against the defendant, which enjoined the defendant from using the plaintiff's mark in the future, and which ordered the defendant to deliver all property using the infringing mark to the plaintiff for destruction.  *Id.* at *8.  The court held that § 362(a)(3) did not bar such relief, reasoning that the plaintiff's suit "d[id] not seek to seize control of any of [the defendant's] inventory or equipment."  *Id.* at *4 (quoting *Larami Ltd. v. Yes! Entm't Corp.*, 244 B.R. 56 (D.N.J. 2000)).  Rather, the court held, a suit seeking an injunction to prevent future infringement is simply "an attempt to prevent allegedly unlawful conduct, not an attempt to directly exercise control over the property of the bankruptcy estate."  *Id.*  The court noted that any other rule would give the defendant free reign to continue infringing on the plaintiff's mark while the bankruptcy case was pending.  *Id.*

The Court finds *AAA*'s analysis unpersuasive.  A lawsuit unquestionably seeks to "exercise control" over the estate's "property" when it seeks to enjoin the debtor from certain uses of its income-producing property, or seeks to force the defendant to destroy its income-producing property.  Indeed, the *intended effect* of this order was to reduce the debtor's future business profits—albeit profits that were obtained through infringing activities.  This clearly reduces money available to the estate, and thus reduces the pot of money available to distribute to creditors.  The fact that the court was *also* preventing the defendant from engaging in unlawful conduct does not change this.

The perceived injustice of a debtor subjecting an innocent third party to unlawful activity also does not support the court's holding.  First, the court's implicit assessment that the bankruptcy stay allows debtors to run amok during reorganization is incorrect.  The plaintiff could have obtained the same injunction in an adversary proceeding before the bankruptcy court, Fed. R. Bankr. P. 7001(7)—which does not require relief from stay, *In re Miller*, 397 F.3d 726, 730 (9th Cir. 2005); *In re Roxford Foods, Inc.*, 12 F.3d 875, 878 (9th Cir. 1993)—or could have sought discretionary

relief from stay from the bankruptcy court.  Second, perceived injustices are in any event an inadequate reason to depart from the text of the relevant stay provision.  It is Congress that decides how to balance competing policy considerations—here, the detriment to a creditor-plaintiff of restricting their choice of forum versus the detriment to the debtor's estate of a more narrow stay provision.  The job of the courts is simply to enforce the provisions as worded.

Admittedly, the question here is closer than in *AAA*: an injunction preventing the City from relying solely on inspection warrants to conduct its searches does not "exercise control" over the City's "property" as clearly as an injunction limiting the debtor's use of its income-producing property.  Nevertheless, the Court concludes that Newberry's requested injunction still falls under § 362(a)(3).  First, the money that the City uses to pay its employees' salaries is undeniably the City's "property," and thus an order enjoining an employee from carrying out their job duties in a particular manner effectively exercises control over that money.  Second, a citywide injunction curtailing the City's search and seizure practices would force the City to spend money to reduce crime that it may not otherwise have spent—i.e., gathering additional evidence for criminal search warrants, or taking other measures to combat crime that would otherwise have been discovered or prevented through these allegedly unlawful searches.[5]  *See In re City of Vallejo*, No. 08-26813-A-9, 2009 WL 9085533, at *1 (Bankr. E.D. Cal. Mar. 2, 2009) (holding that the proposed action was stayed under § 362(a)(3) because "[t]he object of the grievance proceeding would be to compel the

---

[5] The financial effect of such an injunction is even more pronounced when the Court considers the aggregate effect of potentially multiple other lawsuits seeking similar injunctive relief against the City.  *See United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991) ("The object of the automatic stay provision is essentially to solve a collective action problem—to make sure that creditors do not destroy the bankrupt estate in their scramble for relief.").   This concern is particularly acute here given the large number of post-petition claims asserted against the City.  (*See* Chart Listing Lawsuits, *In re City of San Bernardino, Cal.*, No. 6:12-bk-28006-MJ (Bankr. C.D. Cal. July 29, 2016), ECF No. 1882-6 (listing 88 post-petition claims against the City, including numerous civil rights claims).)

City to comply with safety and workload truck staffing standards.  This conceivably would force the City to expend money to place more firefighters on duty and therefore has the potential to exert control over property of the estate.").   The Fourth Amendment may indeed require that they take such extra steps.  However, that does not change the fact that a lawsuit seeking such relief is one that seeks to "exercise control" over the City's "property."   So even assuming Newberry intends to file a lawsuit seeking only injunctive relief—which is doubtful, given their arguments regarding attorneys' fees addressed below—such a lawsuit would be subject to stay under § 362(a)(3).

## 2.    Exemptions for Constitutional Claims

Newberry also argues that the stay should not apply because it would effectively immunize the City for any constitutional violations it commits against its residents.  (Appellant's Opening Br. 14–26.)   The Court rejects this argument for much the same reasons as their previous argument.   First, the Court disagrees that automatic stay leaves the City's residents without any recourse.   Newberry's argument mostly rests on the mistaken premise that all post-petition claims against the City are discharged without the creditor having any chance to assert the claim against the debtor beforehand.  (*Id.* at 18–21; Appellant's Supplemental Reply Br. 1–2, ECF No. 28.)   However, insofar as Newberry seeks damages or fees from the City for the alleged constitutional violation, they can file a claim for administrative expenses.  *See In re Zilog, Inc.*, 450 F.3d 996, 999 n.1 (9th Cir. 2006) (tort claims that "arise post-petition but pre-confirmation can be filed as administrative expenses against the debtor's estate" (citing *Reading Co. v. Brown*, 391 U.S. 471, 477 (1968))); *In re Palau Corp.*, 18 F.3d 746, 751 (9th Cir. 1994).  Indeed, the fact that post-petition claims can be filed as administrative expenses potentially gives such creditors *greater* recourse against the City than regular prepetition creditors, for the payment of administrative

expenses is given priority over almost all other claims against the estate.[6]  11 U.S.C. § 507(a)(2).  Newberry can also file an adversary proceeding against the City, which does not require relief from stay, *Miller*, 397 F.3d at 730; *Roxford Foods, Inc.*, 12 F.3d at 878, and which can be used to recover money or property, obtain an injunction, and obtain declaratory relief. Fed. R. Bankr. P. 7001(1), (7), (9).  In fact, the very order from which Newberry appeals enjoins the City from repeating its conduct vis-à-vis the Newberry plaintiffs.  (AER 8–11.)  Second, the Court cannot carve out exceptions to the automatic stay beyond those already enumerated in § 362(b).  *Conejo Enters.*, 96 F.3d at 352 (Congress did not intend to provide exemptions to the automatic stay beyond those listed in § 362(b)); *cf. Hillis Motors, Inc.*, 997 F.2d at 590 ("Exceptions to the automatic stay should be read narrowly.  The 'precise wording of the stay and its exceptions should be emphasized.'" (citations omitted)).  The fact that constitutional claims may be "deserving" of their own exemption from the automatic stay cannot overcome this.

### 3. Bad Faith

Newberry also argues that because the City is using the bankruptcy stay to shield itself from liability while it commits constitutional violations, it is maintaining its Chapter 9 proceeding in bad faith.  (*See generally* Appellant's Opening Br. 21–24.) It is unclear whether Newberry makes this argument in support of their broader argument that the automatic stay should not apply to their claims, or whether Newberry seeks appellate review of the bankruptcy court's denial of their motion to dismiss the City's bankruptcy proceedings for bad faith.  If the former, the argument does not help Newberry for the same reasons discussed above.  If the latter, the Court

---

[6] The parties should not construe this as a determination that Newberry's claims in fact qualify as administrative expenses, or what the priority of Newberry's specific claims should be.  As the City notes, these issues were not put before the bankruptcy court, and are not necessary to the resolution of this appeal.  (Appellee's Br. 21.)  Rather, the Court is simply pointing out that, contrary to Newberry's argument, persons injured by post-petition torts committed by the debtor are not a class of persons that are totally without a remedy.

1   agrees with the bankruptcy court that Newberry did not provide sufficient notice of

2   the motion to interested parties.  *See* 11 U.S.C. § 921 (dismissal of Chapter 9 petition

3   for bad faith can occur only after "notice" is given).  Newberry's notice of motion

4   stated only that they were seeking relief from stay, not that they were seeking

5   dismissal of the entire bankruptcy petition.  (AER 220–24.)   Moreover, the

6   memorandum of points and authorities in support of Newberry's request to dismiss

7   the petition was buried in the middle of a document spanning several hundred pages.

8   (AER 281–303.)   It is telling, as the bankruptcy court observed, that none of the

9   myriad other creditors either joined or opposed Newberry's motion.  (SER 152.)

10  Thus, the bankruptcy court did not err in denying the motion for lack of notice.

11  **B.     Issue 2: Violation of the First Amendment**

12        Newberry argues that to the extent the stay prohibits them from petitioning the

13  government for a redress of their rights, it violates the Petition Clause of the First

14  Amendment.   (Appellant's Opening Br. 30–31.)    The Court disagrees.    The

15  constitutional right of access to the courts encompasses only "the right to pass through

16  the courthouse doors and present one's claim for judicial determination." *L.A. Cnty.*

17  *Bar Ass'n v. Eu*, 979 F.2d 697, 706 (9th Cir. 1992); *Borough of Duryea, Pa. v.*

18  *Guarnieri*, 564 U.S. 379, 387 (2011) ("This Court's precedents confirm that the

19  Petition Clause protects the right of individuals to appeal to courts and other forums

20  established by the government for resolution of legal disputes.").  The bankruptcy stay

21  does not prohibit Newberry from doing this.   As previously noted, Newberry can

22  present their claims to the bankruptcy court for determination through either the

23  administrative claims process or an adversary proceeding, neither of which requires

24  relief from stay.   Newberry can also withdraw their claims to the district court for

25  adjudication in certain circumstances.   28 U.S.C. § 157(b)(5), (d), (e).   These

26  mechanisms more than adequately satisfy the First Amendment's guarantee of access

27  to the courts. Newberry cites no authority for the proposition that the First

28  Amendment guarantees them the right to file claims in their most preferred forum.

## C.     Issue 3: Declaratory Relief and Attorneys' Fees

Newberry argues that the bankruptcy stay denies them their "right" to pursue declaratory relief under 28 U.S.C. § 2201.  (Appellant's Opening Br. 26–27.)  Not so. First, § 2201 does not guarantee an absolute right to declaratory relief.  *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").  Second, Newberry may seek declaratory and injunctive relief in an adversary proceeding before the bankruptcy court, Fed. R. Bankr. P. 7001(7), (9), and thus the bankruptcy court's ruling did not "vitiate" any "right" to such relief.

Newberry also argues that their request for attorneys' fees under 42 U.S.C. § 1988 is not subject to the automatic stay because such fees are simply a "cost" to the City of engaging in unconstitutional conduct, and thus constitutes an "operating expense" that the City is permitted to incur during bankruptcy.  (Appellant's Opening Br. 27–30.)  However, it is unclear how this bears on the application of the automatic stay.  Whether or not the fees Newberry seeks is an administrative or "operating" expense is matter for the bankruptcy court to consider in conjunction with the City's plan of adjustment; it has nothing to do with whether the automatic stay applies to those claims, or even whether discretionary relief from stay is appropriate.  At bottom, an action that seeks to recover attorneys' fees from the debtor is unquestionably one that attempts to obtain possession of the property of the debtor, and is thus subject to stay under § 362(a)(3).  *In re City of Stockton, Cal.*, 499 B.R. 802, 807 (Bankr. E.D. Cal. 2013) ("[A] monetary award in the form of fees, costs, or otherwise leaves a potential for offending § 362(a)(3) . . . .").

## D.     Issue 4: *Curtis* Factors

Finally, Newberry argues that the bankruptcy court abused its discretion in denying relief from stay based on its analysis of the *Curtis* factors.  (Appellant's Opening Br. 31–35.)  "On request of a party in interest and after notice and a hearing,

the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). "What constitutes 'cause' for granting relief from the automatic stay is decided on a case-by-case basis." *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). However, most courts in the Ninth Circuit look to the *Curtis* factors in deciding whether to grant relief from stay, which include:

> 1. Whether the relief will result in a partial or complete resolution of the issues; 2. The lack of any connection with or interference with the bankruptcy case; 3. Whether the foreign proceeding involves the debtor as a fiduciary; 4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; 5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; 6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; 7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; 8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); 9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); 10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties; 11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and 12. The impact of the stay on the parties and the "balance of hurt."

*In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 737 (Bankr. C.D. Cal. 2015).

After reviewing the relevant factors, the Court concludes that the bankruptcy court did not abuse its discretion in denying relief from stay. Newberry does not seek any relief that the bankruptcy court could not provide. In fact, the bankruptcy court gave Newberry substantially all of the injunctive relief they requested in their lawsuit, and thus their original impetus for seeking relief from stay—that they needed relief to obtain an injunction preventing these allegedly unconstitutional searches from recurring—is now largely moot. (SER at 154–55.) Newberry argues that the injunctive relief ordered by the bankruptcy court is not broad enough, but does not say

1  why the bankruptcy court is an inadequate forum for seeking such additional
2  injunctive relief.  (Appellant's Supplemental Br. 3–4.)

3        The remaining remedies potentially available to Newberry—monetary
4  damages, attorneys' fees, and declaratory relief for the August 2014 search—also does
5  not warrant granting relief from stay.  As the bankruptcy court noted, the City had
6  recently made significant progress on a plan for reorganization, and a lawsuit in
7  another forum seeking money damages and attorneys' fees against the City would
8  introduce an unpredictable variable into the reorganization efforts (e.g., by forcing the
9  debtor to spend an unpredictable amount of money to defend against the lawsuit).[7]  It
10 could also delay confirmation of a reorganization plan, as the plan would need to
11 account for whatever judgment Newberry may eventually obtain (unless it exempted
12 the lawsuit from discharge).  This would substantially interfere with the reorganization
13 plan.  *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984) ("The most important
14 factor in determining whether to grant relief from the automatic stay to permit
15 litigation against the debtor in another forum is the effect of such litigation on the
16 administration of the estate.  Even slight interference with the administration may be
17 enough to preclude relief in the absence of a commensurate benefit.").  In addition, a
18 judicial declaration that the City's search of the apartment complex was unlawful, in
19 and of itself, would be of little real benefit to Newberry.  Finally, as the bankruptcy
20 court noted, granting Newberry relief would be unfair to other similarly situated
21 creditors, who were also denied relief from stay precisely so that the City would not
22 have a multiplicity of lawsuits pending in various other forums.  (SER 152.)  In this
23 sense, the Court must consider not only the effect of granting Newberry relief from
24 stay, but also the aggregate effect of granting relief to all of those other similarly
25 situated creditors—something that would clearly have a negative effect on the
26 debtor's property and reorganization efforts.

27 _____
28 [7] The City's insurance policy apparently covers claims only in excess of $1 million, and thus all
   defense costs and any judgment up to that amount would come out of the City's pocket.  (SER 153.)

Newberry's most relevant countervailing argument is that the bankruptcy court cannot conduct a jury trial on their claims. (Appellant's Reply Br. 17–19.) However, this is not sufficient to grant relief from stay. While the bankruptcy court is not constitutionally empowered to conduct a jury trial, it can do so if specifically designated to do so by the district court and with the consent of the parties. 28 U.S.C. § 157(e). And even if Newberry refused to consent, the claims for which there is a jury trial right can be withdrawn to the district court—which would be the functional equivalent of granting relief from stay here given that the district court is Newberry's preferred forum. Newberry's remaining contentions are mostly just recycled arguments regarding the egregiousness of the City's alleged conduct, which Newberry equates with the need to grant relief from stay. (Appellant's Opening Br. 32–34.) As noted, however, the Court fails to see the link between the egregiousness of the conduct and the need to litigate the matter in a non-bankruptcy forum.

## VI.   CONCLUSION

It bears reemphasizing that the Court does not take Newberry's assertions of Fourth Amendment violations lightly. However, the automatic stay does not leave Newberry without a remedy for these violations. For this and the other reasons discussed above, the bankruptcy court's order denying relief from stay is **AFFIRMED**. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

September 19, 2016

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

15